ACCEPTED
12-14-00116-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
4/17/2015 6:03:03 PM
CATHY LUSK
CLERK

# NO. 12-14-00116-CR

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
4/17/2015 6:03:03 PM
CATHY S. LUSK
Clerk

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS

# TYLER, TEXAS



## JOSE PEREZ
Appellant

## V.

## STATE OF TEXAS
Appellee

## STATE'S RESPONSE

RACHEL L. PATTON
*District Attorney*
P.O. Box 450
Rusk, Texas 75785
(903) 683-2573
(903) 683-2309 fax
rachel@cocherokee.org

ANDREW C. WEBER
*Assistant District Attorney*
P.O. Box 450
Rusk, Texas 75785
(903) 721-4221
(903) 683-2309 fax
andreww@cocherokee.org

i

# Identity of Parties and Counsel

## Appellant

### Jose Perez

Inmate #01951217
Byrd Unit
21 FM 247
Huntsville, Texas 77320

### Counsel in the Trial Court

Chris Day
517 E. Commerce Street
Jacksonville, Texas 75766
(903) 586-5100

## State of Texas

### Rachel L. Patton

Cherokee County District Attorney
West 6th Street
Rusk, Texas 75785

# Table of Contents

Identity of Parties and Counsel .................................................................... ii

Index of Authorities.................................................................................. v

Statement of the Case............................................................................ vii

STATEMENT OF JURISDICTION.................................................................. 1

ISSUE PRESENTED..................................................................................... 1

INTRODUCTION ........................................................................................ 1

STATEMENT OF FACTS ............................................................................... 3

SUMMARY OF THE ARGUMENT................................................................... 5

   1.   THE ADMISSIBILITY OF THE HAND WRITTEN MESSAGE................................. 5

   2.   THE ADMISSIBILITY OF INTERVIEW WITH DETECTIVE GINA BATTLEY.............. 6

   3.   THE ADMISSIBILITY OF CONFESSION DURING INTAKE QUESTIONS WITH JAILOR CREEL ................................................................................................. 7

   4.   THE TRIAL COURT'S DECISION TO NOT DISMISS A JUROR WAS PROPER ......... 7

   5.   EVIDENCE OF THE EXTRANEOUS OFFENSE WAS PROPERLY ADMITTED TO SHOW LACK OF MISTAKE ................................................................................. 8

ARGUMENT.............................................................................................. 8

   I.   THE TRIAL COURT PROPERLY ADMITTED THE APPELLANT'S HANDWRITTEN MESSAGE ................................................................................................ 8

     A.   The Trial Court Properly Determined that the Handwritten Message Was Not a Personal Writing. ....................................................... 8

     B.   Even if This Court Finds that The Handwritten Note Was a Personal Writing Admission By the Trial Court Was Still Proper ......................... 12

     C.   Despite The Fact That the Message Was Not Listed on The Search Warrant, The Appellant's Handwritten Message Was Properly Admitted by the Trial Court Because it Was Found In Plain View ......................... 13

THE TRIAL COURT PROPERLY ADMITTED THE APPELLANT'S INTERVIEW WITH DETECTIVE GINA BATTLEY ........................................................................ 14

    A.   The Trial Court Properly Admitted the Interview With Detective Gina Battley Under Rule 38.22 ................................................................ 14

    B.   The Statement to Detective Gina Battley Was Admissible Under the Miranda Standards ...................................................................................... 17

    C.   The Appellant's Interrogation was Voluntary .................................... 18

THE TRIAL COURT PROPERLY ADMITTED THE APPELLANT'S STATEMENTS MADE TO JAILOR CREEL .......................................................................................... 19

    A.   The Statements Made to Jailor Creel Were in Response to Standard Book-In Questions ................................................................................. 19

    B.   The Trial Court Properly Admitted the Appellant's Statement to Jailor Creel Even if the Questions Were Designed to Elicit an Incriminating Response Because the Appellant had Already Been Warned of his Rights Shortly Before Being Booked In .......................... 22

THE COURT PROPERLY REFUSED TO DISMISS AN EMPANELLED JUROR ................ 22

    A.   There was no Error Because There Was Never Any Agreement Between the Parties to Dismiss the Conflicted Juror ............................ 23

    B.   The Trial Court's Refusal To Dismiss An Empanelled Juror Was Proper ......................................................................................................... 23

4. EVIDENCE OF THE EXTRANEOUS OFFENSE WAS PROPERLY ADMITTED ............. 25

    A.   Evidence of the Extraneous Offense Was Properly Admitted to Show Lack of Mistake ............................................................................ 25

    B.   The Extraneous Evidence Unquestionably Meets the Requirements of Rule 403 Despite the Passage of Time ............................................. 25

    C.   The Testimony of Detective Raffield as a Means of Introducing the "Lack of Mistake" Evidence .................................................................. 28

Prayer ...................................................................................................................... 28

CERTIFICATE OF SERVICE ........................................................................................ 30

CERTIFICATE OF COMPLIANCE ................................................................................ 31

# Index of Authorities

**Cases**

*Alford v. State* 358 S.W.3d 647, 655 (Tex. Crim. App. 2012). ........................... 26
*Alford v. State* 358 S.W.3d 647, 660-662 ....................................................... 14, 27
*Bower v. State*, 769 S.W.2d 887, 906 ................................................................... 12
*Colorado v. Connelly*, 470 U.S. 157 (1986). ................................................ 23, 24
*Coolidge v. New Hampshire*, 403 U.S., at 465 (plurality opinion) ............... 12, 19
*Cross v. State* 144 S.W.3d 521, 524-525 ............................................................. 14
Davis v. United States, 512 U. S. 452, 459 (1994) ............................................... 24
*Delao v. State (Cr. App. 1977)* 550 S.W.2d 289, 291. ........................................ 19
*Goldberg v. State, 95 S.W.3d 345, 369 (Tx. Ct. App.-Hous. [1ˢᵗ Dist.] 2002))* .... 19
*Granados v. State*, 85 S.W.3d 217, 235-36 (Tex.Crim.App.2002) ...................... 30
*Johnson v. State*, 68 S.W.3d 644, at p. 650. ...................................................... 33
*Jones v. State*, 795 S.W.2d 171, 174 ................................................................... 13
*Langley v. State, 2010 WL 1632700* ................................................................... 17
*Messinger v. State, 1988 WL59890 (Tx. Ct. App.-Hous. [14ᵗʰ Dist.] 1988)* ........ 19
*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 12 L.Ed.2d 694 (1966). ......... 23
*Morton v. State, 761 S.W.2d 876, 879 (Tx. Ct. App.-Austin 1988)* ..................... 19
*Mullican v. Texas*, 157 S. W.3d 870, 873. .......................................................... 12
*Nichols v. State*, 754 S.W.2d 185, 190 ............................................. 13, 14, 24, 25
*Quinn v. State*, 958 S.W.2e 395, 402. ............................................................ 14, 30
*Reeves v. State*, 969 S.W.2d, 471. .................................................................. 13, 20
*Rhode Island v. Innis* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)
........................................................................................................................ 26, 13
*Roberts*, 29 S.W. 3d, 600, at p. 601. .................................................................. 31
*Shelton v. State, 2002 WL 32341865 (Tx. Ct. App.-Eastland 2002)* ................... 19
*South Dakota v. Neville*, 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 74 L.Ed.2d 748
(1983) ..................................................................................................................... 26
*State v. Hernandez*, 363 S.W.3d 745 (2011) ...................................................... 30
*Woods v. State*, 152 S.W. 3d 105, 117 (Tex. Crim. App. 2004) .......................... 22

**Statutes**

Article 38.22 of the Texas Code of Criminal Procedure ................................. 13

Article 38.22, §3(a)(2). of the Texas Code of Criminal Procedure .................. 21

Rule 404(b)(2) of the Texas Rules of Evidence ............................................. 14, 15

Tex. R. Crim. Art., 35.16 .................................................................................... 14, 30

Texas Code of Criminal Procedure (CCP) §18.02(10) ........................................ 18

Texas Rule of Appellate Procedure 44.2. ............................................................ 8

Texas Rules of Criminal Procedure Article 18(a)(10) ........................................ 15

# Statement of the Case

Nature of the Case:
On April 22, 2014, the Appellant, Jose Perez, was convicted of Murder and sentenced to fifty years in the Texas Department of Corrections.

Trial Court:
The Honorable Bascom Bentley, 2nd Judicial District Court of Cherokee County, Texas. Cause #18373

Trial Court's Disposition:
The trial court ruled in the state's favor on five evidentiary and jury empanelling issues. Specifically:

(1) the trial court admitted a handwritten will/suicide note found on the appellant's kitchen table;

(2) the trial court admitted the Appellant's statement to detective Battley;

(3) the trial court admitted the Appellant's statement to Jailor Creel;

(4) the trial court refused to excuse a seated juror who admitted to being acquainted with one of the state's witnesses;

(5) The trial court admitted evidence of an extraneous offense under one of the rule 404 exceptions.

Appellant's Action:
The Appellant filed a brief asking this court to either grant a mistrial or reverse his conviction on the grounds of legal and factual insufficiency and constitutional error.

State's Action:
The State has filed this brief arguing that this court should find that the decisions of the trial court were proper.

## STATEMENT OF JURISDICTION

The Twelfth Court of Appeals in Tyler Texas has jurisdiction over this appeal under the Texas Rule of Appellate Procedure 44.2.

## ISSUE PRESENTED

The Appellant asks this court to rule on the limits of several legal exceptions to the rules of evidence and jury selection, as well as issues of constitutional law as they were applied in the appellant's jury trial.

## INTRODUCTION

On April 22, 2014 the Appellant was found guilty of murder by the unanimous verdict of a 12 person jury in the Second District Court, of Cherokee County Texas. The Appellant now comes to this court alleging 6 points of error perpetuated against him during his trial.

Cases such as this are ubiquitous in the Courts of Appeal and this Court is undoubtedly familiar with such. Most often, cases such as this represent a mere grouse with the outcome of trial. Some few cases, admittedly, touch on an undefined aspect of law or an improper decision by the trial court and it is the solemn duty of the Courts of Appeal to root out such abuses. However, a

vast majority of these cases are like this one, mere plaintive cries against perceived injustices wrought by the judge at trial.

There is, unfortunately, no really undefined aspect, no unique question of rights, and no questionable abuse of discretion in this case. Rather, there is the standard "calling of balls and strikes" and the associated anger at the umpire (judge) for what those in the Appellant's clubhouse perceived to be close calls.

Specifically, the appellant alleges six points of error[1] that warrant correction, namely the Appellant argues that the trial court should not have:

1. admitted the handwritten message of Mr. Perez;

2. admitted the appellant's first statement to detective Gina Battley;

3. admitted the appellant's statement to Jailor Creel;

4. refused to excuse a juror who had personal knowledge of one of the state's witnesses; or

5. admitted evidence of an extraneous offense to the jury.

---

[1] The State has elected to respond to five of the six points presented by the Appellant because the sixth point (number 5 in the Appellant's brief) relies on the court finding at least one or more of the first four points in his brief to be true. The state firmly believes that there is not sufficient merit in any of the Appellants points to warrant the arduous discussion proposed by the Appellant's brief.

Unfortunately for the Appellant, all of these points fail under the specific tests, and exceptions set out by the legislature and courts as well as plain logic as elucidated below.

In this brief, the state will show that the trial court had ample authority derived from well-established law and precedent to more than justify its decisions in this case. To extend an analogy, the only thing that is groundbreaking about this case is the ground breaking that the appellant's manager is doing by kicking dirt on the umpire's shoes.

### STATEMENT OF FACTS

On March 17, 2014 the Appellant killed Martha Caselin Ramirez by shooting at her three times and hitting her twice with a 9mm pistol. R. Rec., VIII, at p. 107:8-108:5, 164:6-11. The Appellant then dumped Ms. Ramirez's body on the side of the road. *Id.* at p. 135:14-138:24. Sometime after the shooting, the Appellant called 911 and told the dispatcher that he had killed a woman. *Id*, at p. 21:7. During that call, the Appellant claimed that he had shot Ramirez in self-defense R. Rec., XIII, at State's Exhibit 1, p. 8:21-29.

After directing officers to his location, the appellant was taken into custody and given his Miranda warnings by Officer Luke Sinclair. R. Rec., VIII,

at p. 83:2-91:13, *See also Id.* at p. 58:12-59:4. Subsequently, the Appellant was interviewed by Detective Battley. *Id.* at p. 122:13-128:13. Detective Battley did not provide any Miranda warnings to the Appellant, however, she did ensure that those warnings had been provided by another officer. *Id.* at p. 128:13-129:2. During this interview the Appellant relayed facts that led officers to where the appellant had abandoned Ms. Ramirez' body. R. Rec., VIII, at State's Exhibit 13. The Appellant was subsequently booked into the Cherokee County Jail where he was asked standard book in questions. R. Rec. IX, at p. 16:22-22:15. During this process, the appellant made voluntary statements against his penal interest. R. Rec. IX, at p. 15:3-17:15.

It is clear from the testimony at trial that prior to the murder the appellant had been drinking. R. Rec. VII, at p. 32:21-33:7; VIII, at p. 167:25-168:11. However, it is unclear from the record, whether the appellant was intoxicated. R. Rec. VIII, at p. 168:1-11; R. Rec. IX, at p. 146:8-19. During trial the Appellant claimed during his testimony that shooting Ms. Ramirez had actually been a mistake, a horrible gun safety accident. R. Rec. XI, P. 55:2-23. The State presented various witnesses and evidence contradicting this testimony. The Jury found Mr. Perez guilty of murder. R. Rec. XII, P. 155:15-24.

4

## SUMMARY OF THE ARGUMENT

The trial court did not err in any of its constitutional or evidentiary rulings. The trial court had ample authority and discretion to:

1. admit the handwritten message of Mr. Perez;

2. admit the appellant's first statement to detective Gina Battley;

3. admit the appellant's statement to Jailor Creel;

4. refuse to excuse a juror who had personal knowledge of one of the state's witnesses;

5. admit evidence of the extraneous offense to the jury.

## 1. THE ADMISSIBILITY OF THE HAND WRITTEN MESSAGE

The court properly admitted the appellant's handwritten message because it was not a personal writing, rather, it was a message intended for others to read. Additionally, it was properly seized even though it wasn't listed on the warrant because it was found in plain view and because the officer had a reasonable basis for drawing a connection between the observed objects and the crime that the search warrant was based on. *Bower v. State*, 769 S.W.2d 887, 906.

This message does not meet the definition of a personal writing because it was clearly intended to be published to third parties and is unlike the other

5

types of personal writings that courts have found to be protectable. *Mullican v. Texas*, 157 S. W.3d 870, 873.

An object of evidence found in plain view can be seized under the *Plain View doctrine*. *Coolidge v. New Hampshire*, 403 U.S., at 465 (plurality opinion). The message in this case was found in plain view and seized in the course of a good faith search conducted within the parameters of a valid search warrant. *Reeves v. State*, 969 S.W.2d, 471. The seizure of this message, therefore, qualifies as a lawful search/seizure under the plain view doctrine.

## 2. THE ADMISSIBILITY OF INTERVIEW WITH DETECTIVE GINA BATTLEY

The trial court properly admitted the statements made during the Appellant's interview with detective Gina Battley. The admission was proper because the Appellant was properly warned of his rights in compliance with the state standards of (article 38.22 of the Texas Code of Criminal Procedure) as well as the federal standards (of Miranda V. Arizona and its progeny); and because his intoxication when considered in light of the totality of the circumstances is irrelevant as to the voluntariness of his confession. *See Rhode Island v. Innis*, 446 U.S. 291, 300-302, 100 S.Ct. 1682; *Jones v. State*, 795 S.W.2d 171, 174; *See also Nichols v. State*, 754 S.W.2d 185, 190.

### 3. The Admissibility of confession during intake questions with Jailor Creel

The trial court properly admitted the statements made during the book in questions with Jailor Creel. The admission was proper because questions normally attendant to arrest, custody, or administrative "booking" procedure do not constitute "interrogation" and its implied higher standards; *See Cross v. State* 144 S.W.3d 521, 524-525; *Alford v. State* 358 S.W.3d 647, 660-662. Additionally, Appellant's intoxication when considered in light of the totality of the circumstances was irrelevant. *Nichols*, 754 S.W.2d at 190.

### 4. The Trial Court's Decision to Not Dismiss a Juror was proper

The trial court did not err in failing to dismiss a juror who realized very late in the case that she had personal knowledge of one of the State's witnesses. There was no error because there was no agreement between the parties to dismiss the juror (R. Rec., XII, p. 10:13-21:14.) and because the Texas Rules of Criminal Procedure and the relevant case law gave the trial court significant discretion so as to justify refusing to dismiss a seated juror even if that juror has shown actual bias. *See* Tex. R. Crim. Art., 35.16; *See Also Quinn v. State*, 958 S.W.2e 395, 402.

7

5. **EVIDENCE OF THE EXTRANEOUS OFFENSE WAS PROPERLY ADMITTED TO SHOW LACK OF MISTAKE**

The trial court properly admitted evidence of the extraneous offense because it demonstrates "lack of mistake" an explicit exception under Rule 404(b)(2) of the Texas Rules of Evidence. This admission also passes Rule 403 muster because the extraneous event in this case is unquestionably relevant and because it falls under the carefully constructed allowances for normally highly prejudicial evidence under Rule 404(b)(2) thus superseding the more general relevancy constraints outlined in Rule 403. Tex. Rul. Evid. 403. The Appellant does not make a convincing argument that the facts surrounding this extraneous offense is similar enough to other cases to justify applying the jurisprudence of other Rule 404 exceptions to the present case.

## ARGUMENT

I. **THE TRIAL COURT PROPERLY ADMITTED THE APPELLANT'S HANDWRITTEN MESSAGE**

### A. The Trial Court Properly Determined that the Handwritten Message Was Not a Personal Writing.

Article 18 of the Texas Rules of Criminal Procedure, provides a list of the types of evidence that can be sought through a search warrant. The relevant section for the purposes of this appeal is Article 18(a)(10) which states "that a search warrant may be issued to search for and seize: property or items, except

8

the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense."

Personal documents that are exempt from search have been defined to be limited to "writings like diaries, memos, and journals that were not intended by the writer to be published to third parties." *Mullican v. State*, 157 S.W.3d 870 (Tex. App. — Fort Worth 2005, pet. Ref'd). Plain language interpretation comports with the *Mullican* Court's interpretation, personal writings are "personal". This limits the protections of this "personal writings exception" to writings intended for personal use. The non-exhaustive list of exemplars provided by the Court in *Mullican* further demonstrates that the personal writing exception is very limited to "personal" writings such not intended to be read or published to third parties. *Id.*

Admittedly the law is scant on this subject of defining "personal writings" but most courts agree that "A writing does not qualify as a 'personal writing' within the meaning of article 18.02(10) if its author intends that it be read by others." Exhibit 'E' – *Langley v. State*, 2010 WL 1632700 (Tx. Ct. App.-

9

*Austin 2010).* "The determining factor is the writer's intent, not whether the writings were actually read." *Id.*

In this case, the Appellant admits that he was making a disposition of his property pending his return to Mexico. R. Rec., IV, p. 36:3-4, R. Rec., XIII, Exhibit 73. He, therefore, admits to this document being a disposition which to be effective would have to be published to third parties.

The handwritten note in this case was not a personal writing under either the definition of *Mullican* or a plain language interpretation. *Id.* The message in this case clearly an attempt to make a disposition of property. R. Rec., IV, p. 36:3-4, R. Rec., XIII, Exhibit 73. To be a disposition, it must be shared with third parties who might attempt to verify or contest ownership in the future. So, by its very nature, a document granting a disposition of property cannot be personal. This is especially true of a document purporting to dispose of real property. This court is well aware of the often arduous documentation requirements for the legal disposition of land in Title 2 chapter 5 of the Texas Property Code. These laws are in place to ensure the proper recording of land ownership and other rights tied to real estate. Documents that are prepared to meet these requirements are *intended* to be

shared with third parties to demonstrate an individual's property rights or an intended disposition.

Additionally, common sense shows that the Appellant did not intend this document to be personal because he signed it. R. Rec., XIII, Exhibit 73. A signature is universally considered to be an authenticating stamp or a personal endorsement that can be used by third parties to verify the veracity or sincerity of a document. One does not usually sign documents intended for personal use because there is no need for one to verify to oneself the veracity or sincerity of the document; one already knows of its veracity or sincerity. *Mullican v. State*, 157 S.W.3d 870 (Tex. App. — Fort Worth 2005, pet. Ref'd).

Finally, it is clear from the message, and from the Appellant's own testimony, that he intended the note to be read and acted upon by a third party. R. Rec., XI, p. 109:8-110:25, R. Rec., XIII, Exhibit 73.

Taken in combination, it is clear that this message was intended to be a disposition of property intended to be published to third parties. This message, therefore, cannot meet the legal definition of a personal writing.

## B. Even if This Court Finds that The Handwritten Note Was a Personal Writing Admission By the Trial Court Was Still Proper

Even if this court finds that the handwritten note was a personal writing, the handwritten message should be admitted.

While it is true that Texas Code of Criminal Procedure (CCP) §18.02(10) prohibits the issuance of a search warrant for personal writings, that section says nothing about the admissibility of personal writings obtained through other means. If such notes are located in plain view while officers are conducting a search for other items under a valid warrant, §18.02(10) does not prohibit the state from admitting them into evidence at trial. Four separate Courts of Appeals have held that if personal writings were seized by some means other than a search warrant specifically authorizing their seizure, CCP §18.02(10) *does not apply*. (*See Messinger v. State, 1988 WL59890 (Tx. Ct. App.-Hous. [14th Dist.] 1988);See also Morton v. State, 761 S.W.2d 876, 879 (Tx. Ct. App.-Austin 1988);See also - Shelton v. State, 2002 WL 32341865 (Tx. Ct. App.-Eastland 2002); See also Goldberg v. State, 95 S.W.3d 345, 369 (Tx. Ct. App.-Hous. [1st Dist.] 2002)).*

## C. Despite The Fact That the Message Was Not Listed on The Search Warrant, The Appellant's Handwritten Message Was Properly Admitted by the Trial Court Because it Was Found In Plain View

The trial court properly admitted the handwritten message despite the fact that it was not listed as a sought item on the search warrant because it was found in plain view. *Coolidge v. New Hampshire*, 403 U.S., at 465 (plurality opinion).

Under the Plain View Doctrine, objects falling in plain view of an officer, who has a legal right to be in the position to have that view, are not products of a search, and are subject to seizure and may be introduced into evidence. *Delao v. State (Cr. App. 1977)* 550 S.W.2d 289, 291. Other appellate courts have further found that an object of evidence found in plain view can be properly seized even if that object of evidence is not listed on the search warrant. *Reeves*, 969 S.W.2d, 471.

The place and way that this message was found meet the requirements of the plain view doctrine. R. Rec., IX, p. 93:2-10, R. Rec., XIII, Exhibit 49-50. The officers were appropriately examining the area to both tie the residence to the suspect and also as a possible source of evidence as listed in the warrant, ie. items belonging to the victim and/or items with blood evidence. R. Rec.,

XIII, Defense Exhibit 1. The notepad was left on the kitchen table flipped open to the note itself. The note was only partially obscured by other items. *Id.* The text of the note indicates that it was intended to be read someone other than the Appellant. *Id.* This clearly meets the requirements of the Plain View Doctrine.

In Sum, the handwritten message in this case, was neither a personal writing, or improperly seized, it was therefore admissible.

## THE TRIAL COURT PROPERLY ADMITTED THE APPELLANT'S INTERVIEW WITH DETECTIVE GINA BATTLEY

The recorded interview with Detective Gina Battley was properly admitted because the Appellant was properly Mirandized under both the state and federal standards. Additionally, the Appellant's apparent intoxication is irrelevant when considered in light of the totality of the circumstances.

### A. The Trial Court Properly Admitted the Interview With Detective Gina Battley Under Rule 38.22

The trial court properly admitted the statements made during the Appellant's interview with detective Gina Battley, The admission was proper because the Appellant was properly warned in compliance with the state

statutory warning standards under Article 38.22, §3(a)(2), and under the federal standards of *Miranda v. Arizona* and its progeny.

Article 38.22, §3(a)(2). of the Texas Code of Criminal Procedure provides that no oral statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless prior to the statement but during the recording the accused is given the state's statutory warning and the accused, knowingly, intelligently, and voluntarily waives any rights set out in the warning.

This seemingly rigid standard, is substantially mitigated by Article 38.22, §3(c). which states that assertions of fact or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed may be admitted *Id.* §3(c). This interpretation is reinforced by relevant case law which states that these statements need only circumstantially demonstrate the defendant's guilt," *Woods v. State,* 152 S.W. 3d 105, 117 (Tex. Crim. App. 2004)(emphasis added). and "[if] even a single assertion of fact [is] found to be true and conducive to establishing the defendant's guilt, then the statement *is admissible in its entirety. Id.*

In short, Rule 38.22 provides Texas defendants a set of protections additional to, and separate from, those provided defendants under the Federal Miranda protections. There is an entirely different set of jurisprudence and exceptions to the application of this rule, and the Texas legislature and courts have determined that these protections are not to apply when "[if] even a single assertion of fact [is] found to be true and conducive to establishing the defendant's guilt, then the statement *is admissible in its entirety.*" Woods, 152 S.W. 3d, 117(emphasis added).

In the present case, during the interview with detective Gina Battley, the defendant did not have his rights read to him in compliance with rule 38.22. R. Rec., VIII, p. 128:14-129:25. Nevertheless, this interview was properly admitted because it falls under the *Woods* exception. *Woods*, 152 S.W. 3d, 117. During the interview, the Appellant made multiple relevant assertions of fact concerning where the murder occurred as well as giving a detailed account of the murder in which he alleged that the victim had been an aggressor and that he had acted in self-defense. R. Rec., XIII, Exhibit 13. These statements are clearly statements which could be reasonably seen to demonstrate the Appellant's guilt and therefore are exempt from the higher standards required under rule 38.22, and are therefore admissible.

16

## B. The Statement to Detective Gina Battley Was Admissible Under the Miranda Standards

Under the Miranda Standard, the prosecution may not use statements stemming from custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 12 L.Ed.2d 694 (1966). The courts have further determined that a confession must be "knowing, intelligent, and voluntary." *Colorado v. Connelly*, 470 U.S. 157 (1986).

Law enforcement agencies have effectively applied these standards by reading defendants their rights from pocket cards or by having defendants sign rights waiver forms before beginning custodial interrogations. Courts have held that once a defendant has had his Miranda rights delivered and he has indicated that he understands them that law enforcement can proceed with an interrogation until the defendant "unambiguously invokes his rights." Davis v. United States, 512 U. S. 452, 459 (1994).

In the present case, the Appellant was properly given his Miranda warnings prior to any custodial interrogation and the defendant affirmatively waived his rights by talking to police. R. Rec., VIII, p. 58:12-59:25; R. Rec., XIII,

Exhibit 4. His interrogation, therefore, was properly admitted by the trial court.

## C. The Appellant's Interrogation was Voluntary

To be admissible, a confession must be "knowing, intelligent, and voluntary." *Colorado v. Connelly*, 470 U.S. 157 (1986). Some have argued (as the Appellant does here) that a defendant's intoxication can negate voluntariness. However, the courts have definitively ruled that "even if the appellant was under the influence of intoxicants at the time of confessing, this would not automatically render the confession involuntary. *Nichols v. State* 754 S.W.2d 185, 190, (Tex. Cr. App. 1988). The central question in this inquiry "is the extent to which the appellant was deprived of his faculties due to the intoxication. *Id.* If the Appellant's intoxication rendered him incapable to make an independent, informed choice of free will then his confession was given involuntarily. *Id.*

Multiple witnesses noted that the Appellant appeared to be in some state of intoxication upon his arrest and interrogation. R. Rec., VIII, at p. 93:6-17; R. Rec., VIII, at p. 165:3-8; R. Rec., IX, at p. 16:10-12; R. Rec., IX, at p. 18:24-19:3. However there was never any test performed and the defendant was able

to answer coherently, and direct the officers to the location of the victims body without difficulty. R. Rec., VIII, at p. 93:6-17.

The Appellant's level of intoxication falls far below the evidence adduced in cases that the Court of Criminal Appeals has considered as exemplars for determining levels of intoxication that have affected the voluntariness of a confession. *Nichols v. State* 754 S.W.2d 185, 191 (Tex.Cr.App. 1988).

## THE TRIAL COURT PROPERLY ADMITTED THE APPELLANT'S STATEMENTS MADE TO JAILOR CREEL

### A. The Statements Made to Jailor Creel Were in Response to Standard Book-In Questions

In *Miranda v. Arizona* the Supreme Court held that the prosecution cannot use a defendant's statements taken during a custodial interrogation unless they demonstrate the use of procedural safeguards to secure the defendant's privilege against self-incrimination. 384 U.S. 436, 444 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The Court later elaborated upon the meaning of "interrogation" under *Miranda* in *Rhode Island v. Innis*, explaining that the term refers to express questioning and "any words or actions on the part of the police (*other than*

*those normally attendant to arrest and custody)* that the police should know are reasonably likely to elicit an incriminating response from the suspect." 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (emphasis added).

The Supreme Court has since identified certain types of questions that are "normally attendant to arrest and custody" *See, e.g., South Dakota v. Neville,* 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). These types of questions have been further defined by a four justice plurality to include questions that are reasonably related to a legitimate administrative concerns. *Alford v. State* 358 S.W.3d 647, 655 (Tex. Crim. App. 2012).

General "book in" questions regarding the suspect's name, address, weight, height, place of employment, or physical disability have all been held to be questions that are reasonably related to a legitimate administrative concern and are therefore not subject to Miranda requirements. *Id.*

In contrast, here are a few examples of some questions have been held to be designed to illicit an incriminating response which are therefore inadmissible: questions about where the defendant was going at the time he was pulled over, when and where and what the defendant had last eaten, and

whether the defendant had recently drank any alcoholic beverages have all been ruled to be inadmissible. *Id.*

In the immediate case, the trial court properly admitted the Appellant's statement to Jailor Creel because the statement was made in response to a much more general question than those exemplified and rejected as improper above.[2] R. Rec., IX, p. 15:10-24. In addition, the question was related to a genuine administrative concern by the jailor (whether the Appellant was intoxicated) and would be able to effectively and truthfully answer the jailors subsequent questions. R. Rec., IX, p. 15:20-16:16

Finally, it is not reasonable to argue that the question asked was designed to elicit an incriminating response from the Appellant. Rather it was a general question designed to determine the Appellant's physical state of intoxication. *Id.* The fact that the defendant responded with incriminating statements to a general question does not make them inadmissible.

---

[2] In the Immediate case, Jailor Creel asked the Appellant "do you know why you are here" and noted in her testimony that she asked this only because she smelt alcohol on the Appellant's breath and wanted to assess whether the defendant was intoxicated enough to prevent him from giving adequate responses. R. Rec., IX, p. 15:20-16:16

### B. The Trial Court Properly Admitted the Appellant's Statement to Jailor Creel Even if the Questions Were Designed to Elicit an Incriminating Response Because the Appellant had Already Been Warned of his Rights Shortly Before Being Booked In.

In his brief, the Appellant argues that his statements to Jailor Creel are inadmissible because he was not provided with the requisite warnings under Miranda and the Texas Code of Criminal Procedure article 38.22. However, as shown above, the Appellant was issued his Miranda warning and his statements do not qualify for Article 38.22 suppression because he made statements that disclosed facts indicative of his guilt. So, even if this court finds that the book-in questions were designed to elicit an incriminating response, the Appellant's rights were not violated and the statement was still properly admitted.

## THE COURT PROPERLY REFUSED TO DISMISS AN EMPANELLED JUROR

The trial court did not err in failing to dismiss a juror or realized very late in the proceedings that she had personal knowledge of one of the witnesses.

## A. There was no Error Because There Was Never Any Agreement Between the Parties to Dismiss the Conflicted Juror

In his brief, the Appellant claims that there was an agreement between the parties that a juror should be excused and that the case should proceed with eleven jurors. App. Br., at p. 19. There is, however, nowhere in the record where the parties actually agree to dismiss the juror and to proceed with eleven jurors. R. Rec. XII, p. 10:16-21:13. Admittedly, there is discussion of such an agreement. R. Rec. XII, at p. 20:7-21:14. However, there was never an agreement. R. Rec. XII, p. 10:16-21:13. Therefore, any arguments that the Appellant now makes on this point are based on an inaccurate assumption.

## B. The Trial Court's Refusal To Dismiss An Empanelled Juror Was Proper

The trial court properly exercised its discretion to refuse to dismiss an empanelled juror who later admitted bias.

During voir dire, a juror can be dismissed for cause for actual bias. Tex. R. Crim. Art., 35.16. However, once being empanelled, "the determination of whether a juror can set aside his bias and remain fair and impartial is left to the discretion of the trial court." *Granados v. State*, 85 S.W.3d 217, 235-36 (Tex.Crim.App.2002). Further, "once a jury is empaneled, actual bias is no

23

longer grounds for automatic removal of a seated juror. *See Quinn v. State,* 958 S.W.2d 395, 402 (Tex. Crim. App. 1997). What's more the court of criminal appeals has determined that, it is up to the trial court to determine whether an empanelled juror can set aside bias and remain fair and impartial. *See Granados,* 85 S.W.3d at 235-36; *Quinn,* 958 S.W.2d at 403. In making this determination the appellate courts have given trial courts significant deference. Indeed, appellate courts will only review a trial court's determination of a challenge for cause of an empanelled juror only for "abuse of discretion." *State v. Hernandez,* 363 S.W.3d 745 (2011).

In the present case, there was no abuse of discretion, because the trial court labored diligently through an exhaustive set of venire questioning in the midst of trial in order to determine whether the juror in question had any "actual bias" and whether that juror could set that bias aside in order to render an impartial verdict. R. Rec. XII, p. 10:16-21:13. It is clear from these series of questions that the judge in this case carefully investigated and considered the very specific facts and ramifications of this jurors particularized concerns and ruled appropriately well within his discretion. Id.

## EVIDENCE OF THE EXTRANEOUS OFFENSE WAS PROPERLY ADMITTED

### A. Evidence of the Extraneous Offense Was Properly Admitted to Show Lack of Mistake

Under Rule 404(b)(2) of the Texas Rules of Evidence, evidence of extraneous offenses (that normally would be inadmissible) can be admitted if it tends to show "lack of mistake". For this to be allowed, the defendant must first, argue that his alleged bad acts were an accident or mistake. Id.

In this case, the Appellant, explicitly argued during trial that the murder was unintentional. (R. Rec. XI, P. 55:2-23.) The state is, therefore, authorized to introduce evidence of extraneous events that demonstrate a lack of mistake. Tex. Rul. Evid. 404(b)(2).

### B. The Extraneous Evidence Unquestionably Meets the Requirements of Rule 403 Despite the Passage of Time

At trial, and now in his brief, the Appellant argues that due to the elapse of time, the probative value of the extraneous evidence presented at trial was outweighed by its prejudicial effect and was therefore inadmissible under rule 403. (Tex. R. Evid. 403); *Roberts*, 29 S.W. 3d, 600, at p. 601. To justify this argument, the Appellant analogizes arguments from other rule 404 exceptions and their associated case facts and jurisprudence and attempts to adapt them to apply in this case. (Appellant's Brief p. 21-24). More specifically, the

25

Appellant argues that this court should adopt the jurisprudence for identity evidence and apply those same principles to evidence that is used to show a defendant's lack of mistake. *Id.*

This arguments fails to consider the important practical differences between "identity" evidence and "lack of mistake evidence" and no appellate court has provided guidance on this matter, so it is left to this court to make a determination and disposition on such.

It is undoubtable that time has a greater effect on "identity" evidence than on "lack of mistake" evidence. The appearance, habits and other defining characteristics of people change relatively frequently over time and the probative value of old comparisons decreases significantly. What may have been some aspect that defined someone's character or appearance twenty or thirty years ago could have changed drastically in that period. Therefore, it is reasonable that the courts would hold that an elapse of time, by itself, would limit to the probative value of evidence used to prove identity.

In contrast, it is unreasonable to argue that the mere passage of time is sufficient to make "lack of mistake" evidence excessively prejudicial.

The criminal law is carefully designed to be more lenient to cases where a defendant makes a mistake. Indeed, sometimes defendants can avoid criminal liability completely if they can prove that their otherwise criminal act was the result of a genuine mistake of fact, law or judgement. Naturally defendants may want to claim mistake whether there is a genuine issue or not in order to make the best defense possible. To effectively filter genuine mistakes from fraudulent claims the courts have developed special rules, one of these rules is enshrined in Rule 404 of the Texas Rules of Evidence.

Rule 404 represents a consensus between courts, scholars, and the legislature concluding that (in certain cases) past bad acts can be admitted as an effective means of casting doubt on claims of mistakes in criminal acts.

In determining which acts to admit and whether time should be a limit, this inquiry logically must be an intensive fact and offense based inquiry most appropriate for a trial court. *Johnson v. State*, 68 S.W.3d 644, at p. 650. It must be such because what is a reasonable repeated mistake concerning one offense is completely unreasonable in another case.

In the present case, there was a significant a period of roughly 30 years between the relevant events. However, the specific facts of the present case

are so similar to the past case and the alleged mistake such a reckless wanton disregard for safety and human life that it is more than reasonable to argue that despite the length of time between the events that a court could reasonably find that the past evidence can properly be admitted to show lack of mistake.

## C. The Testimony of Detective Raffield as a Means of Introducing the "Lack of Mistake" Evidence

The Appellant tries to make much of the seemingly unprompted statements of Detective Raffield going even so far as to claim that they were grounds for a mistrial. App. Br., at p. 9-10.

These statements, and the Appellant's complaints regarding them are irrelevant because, as a practical matter the evidence of the extraneous offenses could have been admitted because the in the Appellant's own testimony he claimed lack of mistake. (R. Rec. XI, P. 55:2-23.)

## Prayer

For these reasons, the Court should deny the Appellant's request for a new trial, or a dismissal.

Respectfully submitted.

_____
Rachel Patton
    *District Attorney*

_____
Andrew C. Weber
    *Assistant District Attorney*
Cherokee County District
Attorney's Office
P.O. Box 450
Rusk, Texas 75785
(512) 215-4078

29

## CERTIFICATE OF SERVICE

On April, 17, 2015, in compliance with Texas Rule of Appellate Procedure 9.5, I served this document on the following counsel of record by email and/or fax transmission.


Sten M. Langsjoen
LAW OFFICE OF STEN M. LANGSJOEN
P.O. Box 539
Tyler, Texas 75710-0539
TELEPHONE: (903) 531-0171
TELEFAX: (903) 531-0187

_____
Rachel Patton

_____
Andrew C. Weber

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 6,111 words. This is a computer-generated document created in Microsoft Word, using 14 point typeface for all text, except for any footnotes, which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document

_____

Rachel Patton

_____

Andrew C. Weber